IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PENNSYLVANIA
( MIDDLE DISTRICT )

CHRISTOPHER ALSOP,        )         Civil No. 3:17-cv-2307
     (plaintiff)       **FILED**

v.            **SCRANTON**    ( Mariani, J )

          JAN 1 6 2019

FEDERAL BUREAU OF PRISONS et, al PER _____ ( Saporito, MJ )
    (Defendants)      DEPUTY CLERK

## RULE 15 MOTION TO AMEND/SUPPLEMENT

**NOW COMES** Christopher Alsop, pro'se, pursusant to rule 15, request to leave to file

an amended complaint.

(A) To add preliminary injunction against the FEDERAL BUREAU OF PRISONS under Rule
65 to the Fed.R.CIV.P
(B) To adds and correct a party name
(C) To add new Defendant(s) because of a conduct claim of retaliation after the first
complaint
(D) To reflect the Defendants personal participation.

### procedural history

17. The plaintiff filed his Bivens action on 12/12/2017 stating that the Defendants

along with unidentified employees"John Doe" and Jane Doe" had violated and continued to

violate his Eighth Amendment right to be free from cruel and unusual punishment by refu-

sing him certain necessary medical treatment. On May 29, 2018, the plaintiff filed a Rule

15 motion to leave to amend the complaint and Ex. in support (doc 12-13) and add four

name Defendants. Dr. Daniel Leonard, Catherine Gore, FNP/BC, Bret Brocious, AHSA and D.K

White, Warden. On June 18, 2018, Judge Saporito granted plaintiff's motion to amend his

original complain. On Oct 29, 2018, the Defendants filed a Motion To Dismiss and for

Summary Judgment and Statement of Material Facts. ( doc 60-61). The plaintiff filed

oppositions to the Defendants motion. ( 65,66,68). On Nov 30, 2018, the Defendants filed

a reply to the plaintiff's oppsition to the Defendants Motion To Dismiss and for Summary

Judgment ( doc 76). On Dec 13, 2018, plaintiff filed Sur-reply (doc 81).

ADDITIONAL DEFENDANTS

(1) Regional Medical Director, John Doe #1 for the South Central Region
(2) Regional Medical Director, John Doe #2 for the Northeast Region
(3) Regional Director, M.D. Carvajal for the Northeast Region
(4) Technician, Kevin Vincenzes
(5) Correctional Officer, R. Hays
(6) Nurse Larren Hofford, R.N.
(7) Nurse S. Hamilton, RN
(8) Counselor, D. Russell

## NEWLY EXACERBATED INJURY AND / OR PERMANENT DAMAGE

18. (1) Regional Medical Director, John Doe #1, for the South Central Region,
    (2) Regional Medical Director, John Doe #1, for the Northeast Region, and
    (3) Regional Director, M.D. Carvajal, for the Northeast Region,

delayed and/or denied the plaintiff to have recommended for surgery for over two years
and subjected the plaintiff to newly exacerbated injury in violation of his right to
be free from cruel and unusual punishment. see WEST V. KEKE, 571 F.2D 158 (3RD Cir 1978)
An inmate, who, like the plaintiff, was suffering from painful varicose veins which
surgery was recommended to correct his condition but it was delayed for approximately
17 months before surgery was performed which was considered to be a denial of his
Eighth Amendment right.  The plaintiff was exposed to an unreasonable risk of future
harm due to the Regional Director's delay.  The plaintiff fell a number of times, which
caused him to have a concussion, serious headaches, knees, arm, ankle, feet and leg
pain as well as a right shoulder impingement.  Plaintiff now needs surgery and surgical
management to include physical therapy for his newly exacerbated injury to his right
shoulder.

19. In June of 2018, the plaintiff was evaluated by a physical therapist and was
recommended that the plaintiff receive a joint injection to reduce the pain in the
plaintiff's shoulder.  On 8-21-18 the plaintiff saw an Orthopedic Surgeon, Dr.
Washington, and received a joint injection.

20. Even after post surgery on the plaintiff's leg, it is still painful, sensitive,
and gives out.  This delay left a permanent injury to his right leg.

21.     The plaintiff demands a jury trial and to hold Regional Director MD Carvjal, responsible because he was personally involved in the Constitutional violation he was involved in the decision-making process regarding the plaintiff's medical care and he was confronted with a situation that he could have remedied directly.

The plaintiff demands a jury trial to hold South Central Regional medical Director, and the Northeast Regional Medical Director responsible because they were involved in the decision-making process regarding the plaintiff's medical care. All three Regional Directors acknowledged that the plaintiff's medical condition constituted a "serious medical need" and violated the plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. The plaintiff is requesting $1,000,000 (1 million) in compensatory and $300,000 (3 hundred thousand) in punitive damages from each defendant, South Central Regional Medical Director, John Doe #1, Northeast Medical Director, John Doe #2, and Northeast Regional Director, MD Carvajal for a total of $3,900,000 (three million nine hundred thousand) for his past, future, physical and emotional suffering, future medical bills, sleep deprivation and loss of enjoyment of life.

### FACTUAL ALLEGATIONS OF RETALIATION

22.     The Plaintiff is seeking to add a First Amendment retaliation claim against Defendant Catherin Gore, Defendant AHSA, Bret Bocious, and two new Defendants, Technician Kevin Vincenzes and Counselor D. Russell.

23.     These individuals violated the plaintiff's First Amendment right by "a campaign of retaliation" focusing the grievance process and filing a lawsuit in violation of the plaintiff's right "to free speech and to petition."

24.     To prove a First Amendment retaliation claim, the plaintiff must show: (1) He engaged in constitutionally protected conduct; and (2) he suffered adverse action; and (3) the constitutionally protected conduct was a "substantial or motivating factor for the adverse response."  see Rauser V. Horn, 241 F.3d 330 (3rd Cir. (2001)

## COUNSELOR D. RUSSELL

25.   The retaliation began with Allenwood Counselor D. Russell.  In April of 2017, the plaintiff asked Counselor Russell for a BP-8 which he refused to give to plaintiff. On or about May 3, 2017, the plaintiff asked Mr. Russell again for a BP-8 and once again he refused to give the plaintiff one, so he went to the Unit Manager's office and advised him that Mr. Russell refused to give him a BP-8.  The Unit Manager then gave the plaintiff a BP-8.  Mr. Russell saw this and called the plaintiff into the unit team office.  Mr. Russell then took the BP-8 out of the plaintiff's hand and proceeded to tear it apart and then threw it on the floor.  Mr. Russell told the plaintiff "Don't think you're going to come in here [Allenwood] and file grievances on medical staff." He then directed the plaintiff to put his hands up.  Mr. Russell then searched the plaintiff and tried to intimidate him when he told the plaintiff if he ever goes over his head again, he will put his "black ass" in the hole and send him back to a medium, and then told the plaintiff to get the hell out of his office,  The Unit Manager saw all of this take place.  While the plaintiff was in the Special Housing Unit (SHU), Mr. Russell failed to process a number of plaintiff's grievance forms if it related to medical.

Plaintiff demands a jury trial to hold D. Russell responsible for violating the plaintiff's First Amendment Rights.  The plaintiff is requesting $50,000 (fifty thousand) in compensatory and $25,000 (twenty-five thousand) in punitive damages for his past sleep deprivation, stress, physical and emotional suffering.

## BRET BROCIOUS AND KEVIN VINCENZES

26.   On 7-11-2018, a few hours before the plaintiff was placed in the SHU to go get surgery, he filed  a BP-9 to appeal AHSA Bret Brocious' decision related to the Defendants Mrs. Gore. The very next day on 7-12-2018, AHSA Bret Brocious and Medical Staff, Vincenzes left medical and went to plaintiff's room and searched it.  He was singled out for a search by AHSA Brocious.  The search was planned and not random. They retaliated against the plaintiff for filing a grievance against Mrs. Gore.  They took his legal

(4)

documents related to his Bivens' claims.  They poured water on his clothes, bed, and inside of his food and then wrote a false report to place the plaintiff in the SHU.

27.    On or about 7-29-2018, the plaintiff requested Tylenol from Kevin Vincenzes Because he was having bad headaches.  Mr. Vincenzes looked in the plaintiff's door window and said, "Oh, it's you. You got nothing coming from Medical." Then walked off. On or about 8-10-18, the plaintiff spoke to Mr. Vincenzes and asked him why he treated the plaintiff so bad since they had never had words. Mr. Vincenzes said that's what happens when you file grievances on Medical Staff.  Kevin Vincenzes violated plaintiff's Eighth Amendment right by writing a false incident report because being in the SHU pro-longed his suffering in his injured shoulder to receive a joint injection for another 30 days.  Because of the retaliation, plaintiff had to suffer additional extreme pain that he would not otherwise have endured including pain from Correctional  Officer R. Hays, Nurse S. Hamilton, RN, Nurse Larren Hofford, RN.  Plaintiff had to sleep without a sheet or blanket for one week in a cold, air-conditioned room.

28.    On or about 7 -17-2018, plaintiff had no toilet paper which caused him to have a bowel movement on himself in his only pair of underwear.  When plaintiff requested a pair of clean underwear from the Correctional Officer working in the SHU nicknamed "Bulldog", he humiliated plaintiff by hollering down the range saying, "You shitted in your underwear."  Bulldog refused to give plaintiff a pair of clean underwear and refused him toilet paper.  Plaintiff was denied a shower for 10 days so he had to clean the mess from his bowel movement off his body with toilet water.

29.    If Defendant AHSA Bret Brocious and medicalstaff Kevin Vincenzes would not have had a "campaign of retaliation" against plaintiff by putting him in the SHU on fabricated misconduct, plaintiff would not otherwise have endured this mistreatment which violated his First and Eighth Amendment rights to be treated like a human being.

30.    Plaintiff demands a jury trial to hold Kevin Vincenzes and AHSA Bret Brocious

responsible for violating plaintiff's Eighth & First Amendment Constitutional rights by "a campaign of retaliation" including putting plaintiff in SHU on a fabricated misconduct by a filing of false disciplinary charge to have him transferred to a higher security facility.  The plaintiff is requesting $600,000 (six hundred thousand) in compensatory and $100,000 (one hundred thousand)in punitive damages from Technician Kevin Vincenzes.  The plaintiff is requesting $100,000 (one hundred thousand) in compensatory and $100,000 (one hundred thousand) in punitive damages from AHSA Bret Brocious for his past sleep  deprivation, stress, physical and emotional suffering, as well as loss of enjoyment of life.

### CATHERINE GORE

31.    On June 7, 2018, the plaintiff underwent vascular surgery on his right leg. Post-surgery, Mrs. Gore did a follow-up.  She checked the plaintiff's blood pressure and provided him with a walker for one week.

32.    On or about July 11, 2018, the plaintiff filed a BP-9 grievance requesting Mrs. Gore to correct false misleading statment in his medical records, Exhibit 25. On July 12, 2018, the plaintiff underwent surgery on his left leg.  Out of retaliation because the plaintiff filed a grievance against Mrs. Gore a day before, she failed to follow up after the plaintiff had surgery and Mrs. Gore failed to provide the plaintiff with a walker for one week for his left leg.

33.    On or about Sept. 5, 2018, while in SHU, plaintiff requested toenail clippers that are kept in the SHU, so his toenails would not rip his stockings.  In this case, C. Gore gave the plaintiff cuticle nipper remover, which caused his feet to bleed and a toenail to hit his roommate in his  eye.  A number of times in SHU, Mrs. Gore failed to process the plaintiff's sick call slip about his medical problem and down- graded him from care level II to care level I, which caused the plaintiff to be sent to FCI Ray Brook, New York, which has hilly terrain like Allenwood's hilly terrain that caused the plaintiff pain in his feet while walking up and down the hill.

(6)

34.    Plaintiff demands a jury trial to hold Catherine Gore responsible for violating the plaintiff's First Amendment right. The plaintiff is requesting $50,000 (fifty-thousand) in compensatory and $25,000 ( twenty-five thousand ) in punitive damages for his past sleep deprivation, stress, physical and motional suffering for the plaintiff's medical condition.

**PLACED IN THE SPECIAL HOUSING UNIT**

35.    There is no evidence pointing towards the plaintiff's guilt. Out of retaliation for filing grievance and a lawsuit, Technician Kevin Vincenzes wrote an false incident report and tried to connect the plaintiff's roommate's gout medication to the plaintiff by saying " The identity of the locker and footlocker was identified by mail/personal items and legal documents with inmate Alsop's name and Reg #. ( In the BOP, lockers and chairs are not assigned to inmates by name and/or number ).

36.    This is not " some evidence " that is required under **SUPERINTENDANT MASS CORR. INST V. HILL**, 472 U.S 445 (1985). Because the plaintiff's roommate Mark Lawrence allowed the plaintiff to use a small space in his locker to store some of plaintiff,s personal items. see 2014 U.S Dixt Lexis 64432 **WILLIAMS V. RECKTENWALD**, ( MD PA 2014) The District court held: It was an denied due process because there was no evidence to support the disciplinary finding.

37,    BOP Ps 5270.07 stated inmates responsibility to keep his or her area free of contraband. The plaintiff had no responsibity in this situtation because the found gout medication was not contraband and was prescribe to Mr. Lawrence by his physician.

38. More important, Mr Lawrence, testified at the DHO Hearing he could not believe medical staff searched our room but the found gout medications belonged to him, he take his medication every morning and it was in his locker before he went to work, and it was gone after medical staff search our room.

39.    The night before the plaintiff was in SHU and the morning of the search, the plaintiff was not inside the institution. The plaintiff never failed a drug test. no inmates, or staff, in Allenwood LSCI (low) and or FCI (medium) have ever said that the

(7)

plaintiff sold drugs and/or abuse drugs.

40.   The plaintiff was found guilty of code 113 and lost 40 days good conduct time. The Supreme Court found that there can be liberty interest at stake in a disciplinary procee-ding in which an inmate loses good conduct time see **WOLFF V. MCDONNELL**, 418 U.S 539 (1974) More important the Defendant(s) wrote an false incident report out of retaliation of plaintiff filing grievance and a lawsuit in violation of **RAUSER V. HORN**,241 F.3d 330 (3rd cir 2001)

41.   as relief, the plaintiff seeks an injunction relief and the plaintiff requests this Honorable court to order the BOP to expunge plaintiff's incident report # 3145071.

<h3 align="center">EIGHTH AMENDMENT VIOLATION</h3>
<h3 align="center">R. HAYS; S. HAMILTON, RN AND LARREN HOFORD, RN</h3>

42.   On 7/15/18, the plaintiff was in Allenwood SHU on hunger strike. Allenwood SHU correctional Oficer R. Hays, came to get him from his cell to see two nurses. The plaintiff was taken to a small room on 4 range. Nurse S. Hamilton said she needed to take his blood pressure and for plaintiff to lay on his left side. The plaintiff was told to go all the way down with handcuffs connected to a box behind his back. The plaintiff advised Nurse, S. Hamilton, that she was causing him pain because she was pushing plaintiff down. Nurse, Larren Hofford, RN, said " we're going to do this all day until you end your hunger strike. " The plaintiff was directed by both nurse to turn around and go backward. The plaintiff was moving slow and Officer R. Hays grabbed him and pushed him backward very hard. again the plaintiff advised the nurses that they was hurting him. The nurse said they did not care and told the plaintiff to turn on his right side. The plaintiff advised the nurses that he had an injury shoulder. The plaintiff was ignored and R. Hays grabbed him again and pushed him pushed him down very hard on his right injured shoulder causing the plaintiff lot of pain in his shoulder. Once the plaintiff asked the nurses for their name, they stopped inflicting pain on him. R. Hays told the plaintiff he pissing people off with his hunger strike, then grabbed the plaintiff hard by his injured shoulder and roughly took him back to his cell.

(8)

43.    To state an Eighth Amendment claim for the excessive use of force by a prison

official, the plaintiff only has to establish that the force was not applied in a good

faith effort to maintain or restore discipline, but that it was maliciously and sadistic-

ally used to cause harm, see 2018 U.S Dist. Lexis 35, 784, RODRIGUEZ V. THOMAS, (M.D PA

2018) citing HUDSON V. MCMILLIAN, 503 U.S 1. Which the United States Supreme Court stated

the prisoner need not show significant injury to state an excessive use of force claim,

503 U.S at 8,10 nor does it require that an inmate must suffer an assault before obtaining

relief.

44.    Not only did Nurse, S. Hamilton, RN and Larren Hofford, RN participate in the Eighth

Amendment violation, they failed to protect and/or intervene when Officer R. Hays got

aggressive by grabbing plaintiff and pushing him down very hard with handcuffs connected

to a box behind his back to cause him pain. In a case where an inmate claim an officer had

a duty to take reasonable steps to protect a victim from another officer's use of force,

the inmate must prove that, (1) The officer had a duty to intervene; (2) The officer had

the opportunity to intervene; and (3) The officer failed to intervene. see SMITH v.

MENSINGER, 293 F.3d 641 (3rd cir 2002). The plaintiff's case is similar to RODRIGUEZ v.

THOMAS. The medicalroom where the incident occurred is a small room and the two nurse were

right next to, or close enough to, the plaintiff and also close enough to officer R. Hays

that led to aggression; the nurses in the room could have suspected the aggression and

intervened by stopping Officer R. Hays from his acts of aggression. see RODRIGUEZ v. THO-

MAS 2018 U.S Dist Lexis 35, 784.

45.    During the plaintiff's first and second week in the SHU, Officer R. Hays had denied

the plaintiff paper, pencil, toilet paper, clothes and or clean clothes, cosmetics sheet,

blanket, and a shower for ten days. This violated the plaintiff's Eighth Amendment right

to be free from cruel and unusual punishment because Officer R. Hays failed to give the

plaintiff toilet paper, he was forced to hold his bowel movement which cause constipation

stomach aches and severe headaches. Since Officer R. Hays failed to provide the plaintiff with paper, pencil, and left him with no other opportunity to put in a sick-call request which denied him to get pain medication. On 7/27/18, 7/28/18 and 7/29/18 Officer R. Hays denied the plaintiff's his Ibuprofen medication that Officer R. Hays took out of plaintiff cell on July 15, 2018, and allowed him to suffer pain in his injured right shoulder.

46.    Plaintiff demands a jury trial and hold Nurse, S. Hamilton, RN and Larren Hofford, RN responsible for failing to allow the plaintiff to be free from cruel and unusual punishment. The plaintiff is requesting $100,000 (one-hundred thousand) in compensatory and $100,000 (one-hundred thousand) in punitive damages for Nurse, S. Hamilton, RN and Hofford, RN for a total of $400,000 (four-hundred thousand) for his past sleep deprivation, stress, physical and emotional suffering.

47.    Plaintiff demands a jury trial and hold Correctional Officer R. Hays responsible for failing to allow the plaintiff to be free from cruel and unusual punishment. The plaintiff is requesting $700,000 (seven-hundred thousand) in compensatory and $300,000 (three-hundred thousand) in punitive damages for his past sleep deprivation, stress, physical and emotional suffering.

### PRELIMINARY INJUNCTION AGAINST THE FEDERAL BUREAU OF PRISONS

48.    On 6/12/2018 The plaintiff filed an injunction requesting the court to compel LSCI Allenwood to schedule an MRI procedure for his new developed injury in his right shoulder (Doc 14)

49.    On 6/7/2018 the plaintiff underwent vascular surgery on his right leg. On or about 6/20/2018 the plaintiff started feeling pain in his feet which some time became sensitive and giving out.

50. On 9/20/2018 the plaintiff were transferred from LSCI Allenwood. The Defendant(s) now arguing the plaintiff injunction is moot and they have no obligate to his serious medical need.

51.    The plaintiff now requesting to add an preliminary injunction against the BOP to

stop each federal institution from using diesel therapy to moot his injuction for his

serious medical need. The plaintiff is seeks injunction for the BOP to provide him with

an MRI for his right shoulder and ankle/feet and re-surgery if necessary so he would not

be subject to more injury.

## TO RECEIVE RELIEF OF A INJUNCTION

52.    plaintiff must demonstrate: (A) likelihod of success on the merits; (B) that he will

suffer irreparable harm if the injunction is denied (C) that granting relief will not

result in even greater harm to the nonmoving party; and (D) the public interests favors

such relief.

(A) A LIKELIHOOD OF SUCCESS ON THE MERITS

it is the BOP responsible and affirmative duty to provide the plaintiff with an MRI since

his long term condition failed to improve, Estelle 429 U.S at 103-104.

(B) THAT HE WILL SUFFER IRREPARABLE HARM IF THE INJUNCTION IS DENIED

The plaintiff had already developed a new injury in his right shoulder because of the same

leg that exam positive for swelling, crepitus, weakness and limited range of motion. EX.

71. If denied, the plaintiff will suffer irreparable harm.

(C) GRANTING PRELIMINARY RELIEF WILL NOT RESULT IN GREATER HARM TO THE PARTY

The plaintiff need an MRI for his right shoulder and leg to finds out the solution to his

medical problem so he would not be subject to more injury. Ex. 60,72,74 and 81

(D) THE PUBLIC INTEREST FAVOR SUCH RELIEF AND NOT ALLOW THE BOP TO CONTINUE TO EXPOSE IT
     PRISONER TO MORE FUTURE INJURY

It is beyond dispute that prison officials are obligated to take all reasonable precauti-

ons to protect inmates from known danger see DAVIDSON v. CANNON, 474 U.S 344

## AMEND TO MAKE TECHNICAL CHANGES CONCERNING A PARTY

53. The plaintiff request his medical records from LSCI Allenwood Health Services/Medical

Records so he could identify all John and Jane Doe, these records was denied to the plain.

The plaintiff learned from the Summary Judgment records the correct identity of John

Stoltz, PA-C, Nurse Jane Doe #1 and Jane Doe #2.

54.    The plaintiff seeks for the caption to reflect all the Defendant(s) name.

55.    The plaintiff made an mistake and identified Daniel Leonard, MD as the person who interviewed him and denied him an cane. The records clearly showed John Stoltz was the individual that interviewed the plaintiff on 10/11/2017.Ex. 43 and 158. John Stoltz, knew that but for a mistake made by plaintiff concerning his identity the action would have been brought against him on May 29, 2018 (Doc 12). The plaintiff seeks to specifically substitute John Stoltz, PA-C, for Dr. Daniel Leonard and dismiss Dr Leonard from his Bivens complaint.

56.    The plaintiff seeks to specifically substitute S. Hamilton, RN for Jane Doe #1 The records showed on 7/15/2018 S. Hamilton was the nurse that interview him and requested the plaintiff to sign a " Hunger Strike Fact Sheet" at 6:24pm. Ex. 159

57. The plaintiff seeks to specifically substitute Larren Hofford RN for Jane Doe #2. The records clearly showed that Larren Hofford, RN was the nurse that interviewed the plaintiff on 7/15/2018. Ex. 87

<b>CONCLUSION</b>

**WHEREFORE** base on the foregoing, the plaintiff prays that the United States District court will grant his rule 15 motion.

Respectifully Submitted,

DATE: January 11, 2018

*Christopher Alsop*

CHRISTOPHER ALSOP, ( pro'se)

<b>CERTIFICATE OF SERVICE</b>

A true correct copy of the foregoing motion was filed on January 11, 2018 by placing same in the United States mail, prepaid postage, using first class stamp, delivered to:

Clerk, U.S Dist Court
235 North Washington Ave
Scranton, Pa 18501

*Christopher Alsop*
CHRISTOPHER Alsop, (pro'se)

Melissa Swauger
Asst. U.S. Attorney
PA 82382
228 Walnut St 220
P.O BOX 11754
Harrisburg, Pa 17108

IN THE UNITED STATES DISTRICT COURT

FOR THE

MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTOPHER ALSOP,

    PLAINTIFF,

                              CIVIL NO.: 3:17-CV-2307

VS.                            (JUDGE MARIANI)

                            (MAGISTRATE JUDGE SAPORITO)

FEDERAL BUREAU OF PRISONS, ET.AL

    DEFENDANT.

**FILED**
**SCRANTON**

JAN 1 6 2019

PER _____ Amo
/DEPUTY CLERK

**RULE 15**

    **COMES NOW**, Christopher Alsop, pro-se Plaintiff, moves to file a motion for leave to amend. Plaintiff moves to amend his complaint to add (4) four defendants:

    John Stoltz, MD;

    Catherine Gore, FNP/BC,

    Bret Brocious, Health Services Administrator; and

    D.K. White, Warden,

who were deliberately indifferent to Plaintiff's medical needs and caused Plaintiff to be subjected to "cruel and unusual

1

punishment" in violation of the Eighth Amendment to the United States Constitution, and is the victim of impermissible discrimination on the basis of his disability by being excluded from participation in or being denied the benefits of some service, programs or activity by reason of his disability, in violation of the Americans with Disabilities Act, 42 U.S.C. 12101 and Rehabilitation Act 29 U.S.C. 794.

13. To succeed on a claim under ADA Title II, Plaintiff must establish that:

　　(1). He is a qualified individual;

　　(2). With a disability

　　(3). He was excluded from participation in or denied the benefits of the services, programs or activities of a public entity or was subjected to discrimination by any such entity

　　(4). By reason of his disability.

**BOWERS V. NCAA**, 475 F.3d 524 (3rd Cir. 2006).

　　On 12-21-2017, Craig Charles PA-C placed Plaintiff on medical restriction with limitations on all sports which includes no running, jogging, walking, softball, football, basketball, and handball. On 5-18-2018, Catherine Gore placed Plaintiff to unit confinement in the living quarters except during meals, pill-line, and treatments along with restrictions on every other major life activities, qualifying the Plaintiff as having a disability under the ADA and Rehabilitation Act.

　　Plaintiff repeatedly complained to be taken off medical restrictions and be supplied with a wheelchair, but Mrs. Gore refused

14. On or about 3-28-18 and 4-17-18 Plaintiff had requested a transfer from Catherine Gore and on or about 4-11-18, Plaintiff requested a transfer from Bret Brocious, both for the same reason, to (any) facility where the ground is flat and level, because the Plaintiff's conditions of confinement pose a substantial risk of serious harm to his health.

Allenwood Low is not handicapped accessible because all inmates must walk up and down a long hill that is on a twenty-degree incline in order to access the dining hall, commissary, barbershop, library, recreation, health services, laundry, or chapel.

On 4-16-18 and 4-24-18, Plaintiff filed an Administrative Remedy with the institution to be transferred to (any) facility where the ground is flat and level which was denied by Warden White on 4-30-18

## DELIBERATE INDIFFERENCE TO PLAINTIFF'S MEDICAL NEEDS

15. The Plaintiff had been complaining about losing strength in his legs when he was in Allenwood Medium in 2016, prior to his transfer to Allenwood Low. See Administrative Remedy "Informal Resolution Form" (Exhibit 41 and 42, attached) dated: 9-5-16 where Plaintiff indicated that his "legs be going out where [he] have to catch [himself] from falling." Plaintiff is now walking up and down hills on a twenty-degree incline on legs that have gotten weaker since 2016.

## JOHN STOLTZ, PA-C

3

Showed deliberate indifference to Plaintiff's medical needs because Mr. Stoltz was aware that the Plaintiff was physically disabled. On October 11, 2017, Plaintiff advised Mr. Stoltz that he was losing the strength in his legs which caused Plaintiff to fall on three different occassions and he required a cane because walking up and down the inclined hills at Allenwood exposed him to the threat of tangible residual injury. Mr. Stoltz denied Plaintiff's request despite having the ability to take steps to abate the risk the Plaintiff faced, but he deliberately declined to do so. See **FARMER V. BRENNAN**, 511 U.S. 825 (1994).

A month later on November 6, 2017, Plaintiff lost his strength in his right leg while walking up the hill to the dining hall and collapsed. The Plaintiff was transferred to Health Services by the institution's emergency vehicle. Mrs. Gore was the driver.

### BRET BROCIOUS

Health Services Administrator, showed deliberate indifference to Plaintiff's medical needs because on 4-11-2018 Plaintiff requested a medical transfer to (any) facility where the ground is flat and level because his condition of confinement considered a significant hardship and poses a substantial risk of serious harm to his health since he fell a number of times while traveling up and down Allenwood's hilly terrain (Unit Manager Coordinator Mr. Beaver witnessed this conversation). As Health Services Administrator, Mr. Brocious could have requested a medical transfer to the Warden, or **AT LEAST** could have ordered

4

his medical staff to supply Plaintiff with a wheelchair and/or cane to navigate up and down the hilly incline of Allenwood Low (the institution pays inmate "Wheelchair pushers" to navigate/push disabled inmates up and down the hills of the compound).

Mr. Brocious disregarded the risk by failing to make reasonable measures to abate it, and Plaintiff ended up having two more accidents. Mr. Brocious had the ability to take steps to abate the risk Plaintiff faced but also deliberately declined to do so.

## CATHERINE GORE, FNP/BC

Showed deliberate indifference to the Plaintiff's medical needs. On or about 3-28-18 and 4-17-18, Plaintiff requested a transfer to (any) facility where the ground is flat and level because of his condition of confinement poses a substantial risk of serious harm to his health since he fell a number of times traveling up and down Allenwood's inclined hill. Mrs. Gore told Plaintiff there is nothing she could do about it.

On 5-11-18, Plaintiff returned to sick-call and requested use of a wheelchair and/or cane to navigate the compound because his legs were getting worse by the day. However, nurse, Heather Britt, told the Plaintiff there was nothing she could do, but he would be placed on the call-out to come another day to talk to Mrs. Gore.

On 5-13-18, Plaintiff was using one crutch to travel up the inclined hill to get to the dining hall, but coming out of the

5

dining hall and going down the hill posed a problem. Plaintiff
lost strength in his legs, causing the crutch to slip and
Plaintiff to fall to the ground in the mud. Plaintiff lost
consciousness, suffered a serious headache and scratched up his
knee and hurt his right arm. Plaintiff was once again transferred
to health services by three correctional officers (who witnessed
Plaintiff fall), in addition to nurse Ms. Hofford, RN by the
institution's emergency vehicle.

On 5-14-18, Plaintiff had an appointment with health services
and he spoke with Mrs. Gore about his accident and requested a
wheelchair and/or cane, but she denied Plaintiff's request and
additionally took away the crutch that Plaintiff was using as
Mrs. Gore said it was too dangerous for the Plaintiff to use
crutches because of his condition.

On 5-17-18, at 6:30pm Plaintiff was on the computer and did
not hear the compound officers announce a two-way move so
Plaintiff could go to work. It should be noted that Plaintiff is
a deaf inmate who relies on other inmates to tell him when they
announce the movements so he can go to work.

Plaintiff is a 50 year old man with serious pain in his feet
and toes, and was running late for work. He was trying to walk
fast up Allenwood's inclined hill as failing to show up for work
on time can result in disciplinary action. As soon as the
Plaintiff made it to the top of the hill and tried to make it to
the gate, he lost the strength in his legs and collapsed on his
right arm very hard.Correectional Officer M. Trump (Recreation
Department) witnessed Plaintiff's fall. C.O Trump called health
services and spoke with nurse S. Peguignot. Mr. Trump instructed
Plaintiff to report to health services on the next move to get

6

his arm checked out. When Plaintiff reported to health services, nurse S. Peguignot examined his arm and told him that if it still hurts in the morning to report to sick-call the same morning.

On 5-18-18 Plaintiff went to sick-call and advised Mrs. Gore about his fall and advised her that Recreation Officer Trump witnessed him fall and he reported to health services to be examined by nurse S. Peguignot and told her he believed he damaged his nerve in his right arm and needed an X-Ray. Plaintiff also requested an MRI because Plaintiff later learned he was suffering from an impingement in his right shoulder. Plaintiff again requested a wheelchair but Mrs. Gore again denied his request and placed Plaintiff on confinement to living quarters where he is being excluded from commissary, library, recreation/leisure, laundry, chapel, and other major life activities.

### D.K. WHITE

Warden White showed deliberate indifference to the Plaintiff's medical needs. Plaintiff filed an administrative remedy "BP-9" to the Warden, so Warden White was aware the Plaintiff had fallen a number of times traveling up and down Allenwood's inclined hills and his conditions of confinement subjected him to "cruel and unusual punishment" and posed a substantial threat of serious harm to his health.

On 4-30-18 Warden White denied the Plaintiff's request to be transferred to another facility where the ground is flat and level and failed to order his staff members to supply Plaintiff

7

with an wheelchair and/or cane to navigate up and down Allenwood's inclined hills. Warden White disregarded the risk by failing to take reasonable measures to abate it. Plaintiff ended up having two more accidents. Warden White had the ability to take steps to abate the risk Plaintiff faced, but he deliberately declined to do so. **FARMER**, Id.

All the defendants were involved in the decision-making process regarding Plaintiff's medical care and acknowledged the Plaintiff's condition constituted a "serious medical needs" because the Plaintiff's vericose veins, spider veins, swollen ankle, and ankle problems cause chronic and severe pain and limited his ability to walk and ultimately resulted in hard falls; and on 4-17-18 Plaintiff saw Orthopedist Dr. Ball and was given a provisional diagnosis during an in-house exam finding Plaintiff positive for swelling, crepitus, weakness and limited range of motion. A CT scan of the ankle showed extensive soft tissue and subcutaneous abnormality. (See Exhibit 71). All defendants were aware that a substantial risk of serious harm existed and the defendants were on notice because a number of times the Plaintiff had to be transferred to health services by the institution emergency vehicle, but none of the defendants took reasonable measures to supply Plaintiff with a wheelchair and/or cane to navigate Allenwood Low's hilly terrain.

The Supreme Court held the place of confinement had an affirmative duty to provide adequate medical care for prisoners since incarceration prevents an inmate from caring for himself; **ESTELLE**, 429 U.S. @ 103-104. The defendants failed to supply

Plaintiff with adequate medical care which caused Plaintiff to fall to the ground and lose consciousness, caused serious headaches, injured his knees, arms and shoulder and suffered an impingement in his right shoulder. Since the Plaintiff's last fall on 5-17-18, he has not travelled up Allenwood's hills in 18 days to go to the dining hall or shop in the commissary. The Plaintiff had not eaten in the dining hall from 5-18-18 thru 6-6-18 because of the risk of further injury. See **REED V. McBRIDE**, 178 F.3d 849 (7th Cir. 1999) alleged deprivation of food was sufficiently serious and prison officials deliberate indifference. See also **SIMMONS V. COOK**, 154 F.3d 805 (8th Cir. 1997). Eighth Amendment violation where inmate missed 4 meals because their wheelchairs could not reach around the bunks to the barred door where food was laid out. Here, the records are clear that the defendants acted with deliberate indifference to the Plaintiff's serious medical needs and he was subjected to "cruel and unusual punishment" in violation of the 8th Amendment.

## AMERICANS WITH DISABILITIES ACT 42 U.S.C. § 12101
## AND REHABILITATION ACT 29 U.S.C. § 794

16. The Plaintiff's conditions of confinement are not handicapped accessible as all inmates must walk up and down a long hill that is on a twenty-degree incline in order to access the dining hall, commissary, barbershop, library, recreation, health services, laundry, mailroom or chapel.

Plaintiff missed some meals because he couldn't get up the hill fast enough and had fallen a number of times trying to

navigate from Point A to Point B. Since the Plaintiff had been placed on this compound (Allenwood Low) in 2017, he has been forced to decline physical therapy, barbershop, commissary and some religious services and meals from the dining hall rather than endure the pain and difficulty he would have had to endure walking up and down Allenwood's long hills.

### JOHN STOLTZ, PA-C

Was aware of Plaintiff's medical condition and that the Plaintiff fell a number of times, but Mr. Stoltz denied Plaintiff a cane to use to navigate up and down Allenwood's inclined hills; denied Plaintiff the benefits of services by reason of his disability.

### BRET BROCIOUS, HEALTH SERVICES ADMINISTRATOR

On 4-1-18, Plaintiff spoke with Mr. Brocious in the dining hall and told him about the difficulties he faces while walking up and down Allenwood's hills which have caused Plaintiff to fall a number of times and poses a substantial risk of serious harm to the Plaintiff's health. Mr. Brocious disregarded the risk by failing to take reasonable measures by ordering the medical staff to supply the Plaintiff with a wheelchair and/or cane to navigate up and down Allenwood's inclined hills which denied Plaintiff the benefits of services by reason of his disability.

### D.K. WHITE, WARDEN

Warden White was aware of Plaintiff's medical condition and

that he fell a number of times traveling up and down the hilly terrain of Allenwood, via the Plaintiff's Administrative Remedy that was filed. (Administrative Remedy Attached). Warden White disregarded the risk by failing to take reasonable measures by ordering medical staff to supply Plaintiff with a wheelchair and/or cane to navigate up and down Allenwood's inclined hills, denied Plaintiff the benefits of services by reason of his disability.

### CATHERINE GORE

Mrs. Gore was aware of the Plaintiff's medical condition and that he fell a number of times traveling up and down Allenwood's hills, but she took away the Plaintiff's crutches, denied his request for a wheelchair and/or cane, and placed him on confinement to the living quarters which denied Plaintiff access to facilities available to other prisoners which denied Plaintiff the benefits of services by reason of his disability.

All defendants had failed to provide adequate medical care and thereby reasonably accomodate his medical needs and have precluded him from participating in various prison programs and major life activities; a violation of the Americans with Disabilities Act of 42 U.S.C. § 12101, and Rehabilitation Act of 29 U.S.C. § 794.

The refusal to accommodate the Plaintiff's disability kept him from accessing meals and commissary, library, recreation/leisure, laundry and the chapel departments, which is sufficient to state a claim under Title II of the Americans with

11

Disabilities Act and Rehabilitation Act.

## RELIEF SOUGHT

As relief, the plaintiff seeks an injunction relief and money damages. Plaintiff seeks $ 600,000 in compensatory and $ 150,000 in punitive damages from each defrndant for a total of $ 3,000,000.00

Respectfully submitted,

Christopher Alsop/pro'se
# 03078-061

Dated: 5/21/2018

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Christopher Alsop
Plaintiff

v.                                                          Case No:

Federal Bureau of Prisons, et al
Defendant

### BIVENS COMPLAINT

Comes now Christopher Alsop, pro' se plaintiff, and for his Complaint pursuant to Bivens, seeking

injunctive relief for his medical issues, as follows:

1.  The plaintiff is a federal inmate currently housed at Allenwood Low Security Correctional

    Institution in White Deer, PA, and who is legally deaf.

2.  The defendants are the Federal Bureau of Prisons (BOP) and various unknown John Doe and

    Jane Doe defendants whose identity will be provided to the Court through discovery.

3.  The Court has jurisdiction over this matter under 28 USC 1331.

4.  The complaint alleges deliberate indifference to the plaintiff's medical needs under the 8th

    Amendment to the United States Constitution.

5.  The complaint is being made pursuant to Bivens v. Six Unknown Agents of Federal Bureau of

    Narcotics, 403 US 388, 91 S.Ct. 1999 29 L.Ed. 2d 619 (1971).

### FACTS

6.  The plaintiff has had varicose veins in his legs since 2005-2006. He is in constant pain when he

    walks; the plaintiff's varicose veins have grown worse since 2006. (See attached pictures)
    EXHIBIT 150

7.  On October 5, 2015, the plaintiff filed an Administrative Remedy (See attached) in an attempt to
    EXHIBIT 1-10
    formally resolve the issue with the BOP as allowed under BOP procedures. The plaintiff sought

    to have the BOP close his valves and strip the affected veins because his blood is leaking outside

1

of his valves and moving in two directions. The blood that is pooling in the plaintiff's legs can

lead to a variety of health problems including trophic ulcers, infections and blood clot formation

if not treated.   It is an accepted medical fact that varicose veins respond well to treatment by

surgery. On October 11, 2017, the plaintiff went to the LSCI Allenwood Health Services and

advised Leonard Daniel, MD, that his legs are losing strength which had caused the plaintiff to

fall three different times. On November 6, 2017, the plaintiff lost the strength in his right leg and

collapsed during the evening meal in the Allenwood Low Dining Hall, and had to be carried out

by medical staff. During this incident, the plaintiff came into violent contact with the floor of the

Dining Hall and felt immediate pain in his feet, ankle, arms and head. The plaintiff was

transferred to Allenwood's health care facility by the institution's emergency vehicle.

<u>VISIT TO VASCULAR SURGEON SPECIALIST</u>

8.   Several times while in the custody of the BOP the plaintiff has been seen by a vascular surgeon

specialist about his varicose veins, and each time the surgeon has recommended that the

plaintiff have his veins stripped and his valves closed to stop the blood from leaking outside of

his valves. On January 15, 2015, the plaintiff was seen by Clinical Radiology in Oklahoma. On

November 9, 2015, the plaintiff was seen by PCC Surgery in Fort Worth, Texas. On or about

February 1, 2016, the plaintiff was seen by the Vascular and Vein Center in Fort Worth, Texas

and the plaintiff provided Ramesh Paladugu, MD, recommended vein stripping. (See Ramesh

Paladugu's report, page 4, attached hereto) On January 17, 2017, the plaintiff was seen by

EXHIBIT 135-138

Susquehanna Health of Willimsport, PA and there the vascular surgeon specialist, J. Franklin

Oaks, Jr. recommended vein stripping in his report.

In his report, Dr. Oaks stated "Alsop has failed conservative therapy and I would recommend a

radio frequency ablation of bilateral greater saphenous veins. Dr. Oaks reviewed in detail both

surgery and a post op plan of care within 24 hours of surgery when the plaintiff could return to

2

all activities without restriction. Pictures were taken. (See attached report) Based on the a

EXHIBIT 11

foregoing recommendations from medical specialists, the BOP Regional Director's decision

denying plaintiff's required medical treatment is a deliberate indifference under the Eighth

Amendment. The BOP and the BOP employees named herein have been made aware of an

excessive risk to Alsop's health and safety, and knowing that excessive risk have chosen willfully

to disregard it. This conduct is per se instance of deliberate indifference to the Eighth

Amendment where the BOP is refusing critical medical care for a citizen they have held in

custody since 1998.

<u>ADMINISTRATIVE REMEDY PROCESS</u>

9.  Plaintiff was incarcerated at Fort Worth Medical Center and his treating physician, Dr. A. Baruti,

sent information to the BOP Region, recommending that the plaintiff receive surgery or

treatment from a vascular surgeon specialist to repair his vascular veins. Region denied this

recommendation. On January 13, 2016, the plaintiff filed an Administrative Remedy (BP-229) to

the Warden in Fort Worth, Texas. On March 24, 2016, the plaintiff filed an Administrative

Remedy (BP-230) to the BOP Regional Director and on July 7, 2016, the plaintiff filed and

Administrative Remedy (BP-231) to the BOP's General Counsel at the BOP's Main Office in

Washington, DC, completing the exhaustion of the Administrative Remedy process as required

under the Prison Litigation Reform Act (PLRA). (See attached) Since then no further remote care

EXHIBIT 1-10

has been provided to the plaintiff to relieve his very painful varicose veins and his ankle which

also swells like a balloon as a collateral effect, with the exception of compression stockings

which aren't very effective at reducing the pain and discomfort.

<u>DELIBERATE INDIFFERENCE</u>

10. Under the Eighth Amendment a prisoner has the right to be free from cruel and unusual

punishment and deliberate indifference by prison officials to a prisoner's serious medical needs.

3

The delay or denial of such medical care is considered to be a denial of this Eighth Amendment right. To demonstrate a claim of deliberate indifference under the Eighth Amendment a prisoner must show that:

a) The defendant was deliberately indifferent to his or her medical needs.

b) That those needs were serious. (See <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir 1999)

Deliberate Indifferent has been found where a prison official:

a) Knows of a prisoner's need for medical treatment but intentionally refuses to provide it

b) Delays necessary medical treatment based on a non-medical reason

c) Prevents a prisoner from receiving needed or recommended treatment (<u>Rouse</u>, 182 F.3d at 197)

The defendants were deliberately indifferent to the plaintiff's serious medical needs (the treatment of his varicose veins) because of no significant level of care besides the compression stockings have been provided to the plaintiff, the defendants have clear knowledge of the plaintiff's serious condition and need for treatment but having decided to willfully ignore the plaintiff's needs. (See <u>Estelle v. Gamble</u>, 429 US 97, 104 (1976)). Deliberate indifference is manifest where prison authorities deny reasonable requests for medical treatment and such denial exposes the inmate to undue suffering or the threat of tangible residual injury.  (See <u>Farmer v. Brennan</u>, 511 US 825, 837-38 (1994)).

SERIOUS MEDICAL NEED

11. When the plaintiff walks his feet and lower extremities are in serious pain. The plaintiff has fully lost his strength in his legs several times as a result of this condition which has caused him to fall violently to the ground while trying to walk. Is the BOP waiting for the plaintiff to fall to the ground and break his neck before they take any action to provide this critically needed medical care for him? (See <u>Gutierrez v. Peters</u>, 111 F.3d 1364 (7th Cir 1997). (Recognizing a serious

4

medical need "where the condition significantly affects an individual's daily activities" and features chronic or substantial pain. The plaintiff cannot use his legs to exercise without experiencing extreme pain, nor can he run or play sports to get his needed exercise. The plaintiff has had high cholesterol for five years and must exercise to keep his cholesterol level down. High cholesterol levels can lead to heart disease.  The defendant's denial of this needed medical care is also precluding the plaintiff from participating in various BOP prison programs which also violates the plaintiff's rights under the American with Disabilities Act, 42 USC 1210. On October 11, 2017, the plaintiff asked Leonard Daniel, MD, at LSCI Health Service, to supply him with a cane since he has fallen a number of times due to his untreated condition, but Mr. Daniel denied the plaintiff's very reasonable request. Also, the vascular surgeon specialist recommended that the plaintiff receive medication for the pain in his foot and ankle but the BOP has also refused to provide the plaintiff that medication for the pain. See J. Franklin Oaks, Jr. Recommendation Report dated January 11, 2017 (Report attached) recommending Acetaminophen 325mg capsule, Calcium Polycarbophil 625mg capsule, Docusate Sodium 100mg capsule and Ibuprofen 800mg tablet. Not only did the BOP and the defendants ignore the prior recommendation of the vascular surgeon specialists to have the plaintiff's valves closed and his veins stripped, they have ignored the vascular surgeon's recommendation list provided to supply the plaintiff with pain medication to alleviate the pain being caused by not having his condition treated. Without the pain medication, the plaintiff is being forced to suffer excruciating pain in violation of his right to be free from cruel and unusual punishment.

The plaintiff is suffering from varicose veins which is a serious medical condition because when his veins bulge or become twisted as they do when someone has varicose veins, blood flow through the veins can become sluggish or slow and this can cause superficial blood clots known as superficial thrombophlebitis. From this stage there is a great risk that a DVP (deep vein

5

thrombosis) might occur. DVT can lead to major health problems and in some cases be fatal. The lack of proper treatment so far has now led the plaintiff to experience additional problems. For example, in 2006 the plaintiff only had pain in his lower right leg, but now he has pain in his lower left leg also. The plaintiff believes that the lack of treatment of his varicose veins may lead to deep vein thrombosis (DVT) because of the BOP's denial of medical care and its failure to follow the vascular surgeon's recommendations to provide surgery to stop the blood from pooling into his legs. This very critical surgery needs to be given to the plaintiff so that he is not subjected to further falls and injuries as he has attested to in his complaint.[1] (See <u>Ramos v. Lamm</u>, 639 F.2d 559, 576 (10th Cir 1980) (*Holding medical needs are serious when they cause "continued and unnecessary pain and loss of teeth" resulting in delay in providing oral surgery.*) In this complaint, the plaintiff has demonstrated that the defendants are deliberately indifferent to the plaintiff's serious medical needs in violation of his rights under the Eight Amendment to the United States Constitution.

<u>RELIEF SOUGHT</u>

As relief the plaintiff seeks an injunction from this Honorable Court ordering the BOP to follow the vascular surgeon specialist, J. Franklin Oaks, Jr., from Susquehannah Health; Ramesh Paladugu from the Vascular and Veins Center; and the plaintiff's treating physician, Baruit A. from Fort Worth Medical Center, recommendation to repair the varicose veins on both of the plaintiff's legs via the appropriate surgical method.

---

[1] Plaintiff is having other circulation problems. When plaintiff lies down for one hour his blood stops flowing properly through his upper body which causes him chest pains, headaches, cramps and both his arms fall asleep.

## CONCLUSION

WHEREFORE, based on the foregoing, the plaintiff prays that the United States District Court will order the BOP to repair the varicose veins in his legs, which if not repaired will result in further injury to the plaintiff whereby the plaintiff will be forced to file a subsequent suit for compensatory and punitive damages against the defendants.

Respectfully Submitted,

Date:  9/19/2017

Christopher Alsop #03078-081
LSCI Allenwood
P.O. Box 1000
White Deer, PA 17887

7

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing motion was filed September 19th, 2017 by placing same in the
United States mail, prepaid postage, using first class stamp, and certified delivery to:

Clerk of Court
235 North Washington Ave.
Scranton, Pa 18501

Christopher Alsop, Pro se

UNICOR FEDERAL PRISON INDUSTRIES, INC.
LEAVENWORTH, KANSAS — Phone (913) 682-8700 ext. 465

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

EXHIBIT 25

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | ALSOP, Christopher | 03078-061 | Lycoming A | LSCI Allenwood |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A– INMATE REQUEST** I am appealing the Response to previously filed BP-8 stating that I am receiving appropriate treatment and medical information via my medical records are accurate. I contend that the statement provided by my provider, Ms. Gore in the Health Services Clinical Encounter dated 5/17/18 is misleading, stating "50 year old male reports falling on compound on 5/17/18, no injury assessment done and did not report to staff, now complaints of right arm pain." This statement is misleading as Inmate Alsop advised Ms. Gore of the fact that Officer Trump and over eight inmates witnessed me fall. Mr. Trump immediately called Health Services and spoke to Nurse ~~Practitioner~~ *Provider* S. Peguignot, RN, and reported the injury. Trump advised me to report to Health Services. When I went to Health Services, Nurse Peguignot examined my arm and told me if it still hurt to report to sick call in the morning.   * Please note -- C.Gore is my P.A.

REMEDY: To have Ms. Gore's misleading statement corrected to indicate that I did report my injury to staff and had Nurse Provider S. Peguignot, RN examine me.

| 7/5/2018 | Christopher Alsop |
|---|---|
| DATE | SIGNATURE OF REQUESTER |

**Part B– RESPONSE**

EXHIBIT 25

| DATE | WARDEN OR REGIONAL DIRECTOR |
|---|---|

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

CASE NUMBER: _____

ORIGINAL: RETURN TO INMATE

CASE NUMBER: _____

**Part C– RECEIPT**

| Inmate Name: ALSOP, CHRISTOPHER | | Reg #: 03078-061 |
|---|---|---|
| Date of Birth: | Sex: M   Race: BLACK | Facility: ALF |
| Encounter Date: 10/11/2017 13:45 | Provider: Stoltz, John PA-C | Unit: L01 |

**Exam:**

**Coordination - Stance**
Yes: Normal Stance, Steady          EXHIBIT 43

**Exam Comments**

positive varicose veins bilateral lower leg. mild tenderness around right ankle. NO edema.
right ear partially occulted ear canal secondary to ear wax.  Tried to remove with curette the wax was very hard and I
was unable to remove.
pt. did walk with mild limp.

**ROS Comments**

right did states that his right ankle did give out when standing 2 times due to the varicose veins.

**ASSESSMENT:**

Ankle, foot- Pain in joint, 719.47 - Current

Hemorrhoids, internal without mention of comp, 455.0 - Resolved

Leukocytopenia, unspecified, 288.50 - Current

LTBI Prophy Complete, 795.5B - Current

Other and unspecified hyperlipidemia, 272.4 - Current

Varicose veins, asymptomatic, 454.9 - Current

Unspecified hearing loss, H9190 - Current

**PLAN:**

**New Medication Orders:**

| Rx# | Medication | Order Date | Prescriber Order |
|---|---|---|---|
| | Naproxen Tablet | 10/11/2017 13:45 | 500mg Orally  -  Two Times a Day PRN x 60 day(s) |

**Indication:** Ankle, foot- Pain in joint

**Disposition:**

Follow-up at Sick Call as Needed
Return Immediately if Condition Worsens

**Other:**

numbness in arms after sleeping- try naproxen bid
foot pain- continue compression stocking.  try naproxen.
right ear wax-use debrox from commissary each evening prior to bed  X 3 days.
labs are pending.
Pt. did request a cane but I do not fell like this is clinically indicated. He may hold onto something when going from a
sitting to standing position if needed. Will await and see if the naproxen helps his symptoms.
His MDS was revised as he requested

**Patient Education Topics:**

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 10/11/2017 | Counseling | Plan of Care | Stoltz, John | Verbalizes Understanding |

EXHIBIT 158

# Bureau of Prisons
# Health Services
## Pain Management

| | | |
|---|---|---|
| **Begin Date:** 01/01/2017 | **End Date:** 12/31/2017 | |
| **Reg #:** 03078-061 | **Inmate Name:** ALSOP, CHRISTOPHER | |

| Date | Intervention | Pain Quality | Location | Pre | Post | Provider |
|---|---|---|---|---|---|---|
| 10/11/2017 13:59 ALX see disposition | | Sharp | Ankle-Right | 4 | | Stoltz, John PA-C |
| He reports that the his right ankle has given out twice due to the varicose veins. | | | | | | |
| **Orig Entered:** 10/11/2017 14:05 EST   Stoltz, John PA-C | | | | | | |
| 09/06/2017 14:12 ALX Placed on MLP schedule for evaluation | | Cramping | Multiple | 3 | | Williams, K. LPN |
| **Orig Entered:** 09/06/2017 14:14 EST   Williams, K. LPN | | | | | | |
| 03/06/2017 09:04 ALX continue compression stockings | | Aching | Leg-Lower | 8 | | Zaino, Beth PA-C |
| **Orig Entered:** 03/06/2017 09:07 EST   Zaino, Beth PA-C | | | | | | |

Federal Bureau of Prisons
Clinical Practice Guidelines

*Alsop, Christopler   # 63078-0el*

Medical Management of Inmates on Hunger Strike
December 2013

## Patient Handout: Hunger Strike Fact Sheet

**The Risks of Refusing Fluids:**                              EXHIBIT 159

→ Not drinking fluid can cause **death** within days.

- Not drinking fluid can cause lasting organ damage.
- You will get symptoms very soon if you do not drink fluids.
- You should drink at least 6–8 cups of fluid every day.

**The Risks of Refusing Food (Fasting):**

→ Not eating food for a long time (prolonged fasting) can cause **death**.

- Not eating food can cause lasting organ damage.
- You may become dizzy during your hunger strike. You should move slowly and carefully to avoid falls.
- As you continue to fast, you may get many other symptoms such as weakness, confusion, vomiting, stomach pain, and a higher risk of infections.
- If you are in good health when you start to fast, and you keep on drinking water, you may survive for weeks.
- After prolonged fasting (starvation), you may have lasting organ damage even after you start eating again and gain weight.

**The Risks of "Refeeding":**

→ **Death** can happen when you start eating after not eating for a long time. This is called "Refeeding Syndrome."

- If you have lost more than 10 pounds or have not eaten for more than 14 days, talk to the health care staff **before** you eat again.
- Your risk of death is less if you start eating under medical supervision.
- If you have not eaten for many days, you should start to eat by taking only small amounts of food the first few days and then step up to normal eating over 5–7 days.

**What You Need To Know:**

- If you go too long without drinking or eating, you are in danger of lasting medical harm—even with medical care.
- You may die, even after you start to drink and eat again.
- Health care staff are concerned about your health, so they will check with you to make sure that you understand that you may die if you refuse food or fluid and to see if you have clear reasons for doing so.
- If you go into a coma or your heart stops, you will receive medical care needed to try to save your life, including CPR, food, and fluids.

*7-15-18   12:50 pm Refused to sign   Larren Hoffordea*

*6:24 PM Refused to sign   J. Hamilta Shumboat*

BOP INTERNAL USE ONLY                    Page 25

**Larren Hofford, RN**
**LSCI Allenwood**

| Inmate Name: ALSOP, CHRISTOPHER | | Reg #: 03078-061 |
|---|---|---|
| Date of Birth: | Sex:   M   Race:  BLACK | Facility: ALF |
| Encounter Date: 05/13/2018 11:38 | Provider: Hofford, Larren RN | Unit:   L01 |

**Exam:**

    **General**

        Yes: Within Normal Limits                      EXHIBIT 160

    **Musculoskeletal**

        **Shoulder**

            Yes: Normal Exam R, Full Range of Motion R, Non-Tender on Palpation R

            No: Swelling R, Inflammation R, Ecchymosis R, Tenderness R

        **Knee**

            Yes: Normal Exam R, Full Range of Motion R, Non-tender on Palpation R, Normal Active ROM R, Abrasion(s) R

            No: Swelling R, Inflammation R, Warm to Touch R, Tenderness R, Laceration(s) R, Contusion(s) R, Hematoma R

**Exam Comments**

    Patient allergies reviewed and needed updates applied during this visit. See Chart: Allergies for most recent patient allergy list.

    Called by Operations Lieutenant to bring ambulance to food services. On arrival noted inmate laying outside on the ground with Officers around him. Placed inmate on reeves and transported to health services.

    On assessment noted no deformities, lacerations or swelling. Right knee had a tiny abrasion approx. .02cm. Has full arrange of motion in right arm and right knee. was able to ambulate with his crutch without difficulty.

    Inmate had no LOC and did not strike his head. He landed on his right side. Inmate requested Tylenol for pain.

**ASSESSMENT:**

    No Significant Findings/No Apparent Distress

**PLAN:**

**New Medication Orders:**

| Rx# | Medication | Order Date | Prescriber Order |
|---|---|---|---|
| | Acetaminophen 325 MG Tablet | 05/13/2018 11:38 | 2 tabs Orally  -four times a day x 3 day(s) |

        **Start Now:** Yes

        **Night Stock Rx#:**

        **Source:** Night Stock

        **Admin Method:** Self Administration

        **Stop Date:** 05/16/2018 11:37

        **MAR Label:** 2 tabs Orally  -four times a day x 3 day(s)

        **One Time Dose Given:** No

**Disposition:**

    Follow-up at Sick Call as Needed

    Return Immediately if Condition Worsens

**Patient Education Topics:**

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 05/13/2018 | Counseling | Plan of Care | Hofford, Larren | Verbalizes Understanding |

January 10, 2019

Dear Clerk of Courts;

This envelope contains:

1)  The Bivens Complaints that were filed on 12-12-2017.

2)  A rule 15 amended motion that was filed on 5-29-2018.

3)  A new rule 15 amended motion adding a preliminary injunction against the Federal Bureau of Prisons, and

4)  Two rule 15 amended motions pending under screening pursuant to 28 U.S.C. §1915 re-type, combined together into one rule 15 motion.

Respectfully Submitted,

Christopher Alsop, pro se



Christopher Alsop 03078-061
Federal Correctional Institution Cumberland FCI
PO Box 1000
Cumberland, MD 21501

LEGAL
MAIL

RECEIVED
SCRANTON

JAN 16 2019

PER _____ DEPUTY CLERK

03078-061
Clerk Of Court
235 N Washington AVE
Scranton, PA 18501-1148
United States

LEGAL
MAIL